UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                           :

MARIELA DE LA ROSA, Individually and as    :
the Personal Representative and Administrator of :
the Estate of Felix Antonio De La Rosa Alvarez,  :    Index No. 20-CV-1128
                                           :

                     Plaintiff,    :

                                        :    **COMPLAINT**
   -against-                     :

                                         :

THE UNITED STATES OF AMERICA;        :    **JURY TRIAL DEMANDED**
CHRISTOPHER REID (Special Agent, U.S.   :
Department of Homeland Security);       :
DR. BRUCE BIALOR;                  :
DUVINKA JORDAN;                  :
J.F.K. ADVANCED MEDICAL P.C.;      :
DR. MANUEL CEJA; and             :
JOHN DOE(S) (Other unknown entities and  :
individuals),                          :

                     Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

       Plaintiff Mariela De La Rosa ("Plaintiff"), individually and as the administrator of the

Estate of Felix Antonio De La Rosa Alvarez ("Mr. De La Rosa" or "decedent"), by and through

her attorneys, Colson Law PLLC and Gelber & Santillo PLLC, for her complaint against the

United States of America, J.F.K Advanced Medical P.C. ("JFK Medical"), Christopher Reid, Dr.

Bruce Bialor, Duvinka Jordan, Dr. Manuel Ceja, and John Does (other unknown entities or

individuals that may have treated or failed to treat Mr. De La Rosa, including but not limited to

employees of the Department of Homeland Security ("DHS"), Bureau of Prisons ("BOP"),

Metropolitan Detention Center ("MDC") and JFK Medical), (collectively, "Defendants"), alleges

upon information and belief as follows:

## **NATURE OF THIS ACTION**

1.      This is an action to recover damages arising from the wrongful death of Felix Antonio De La Rosa Alvarez, a beloved husband and father of six children, who tragically died while in the custody of the United States Government due to an acute heroin overdose that could have and should have been avoided.

2.      Desperate to provide for his family, Mr. De La Rosa traveled from the Dominican Republic to the United States as a drug courier, and was detained at JFK airport by DHS after x-rays and testing, which upon information and belief was performed by JFK Medical, revealed that his body contained pellets of heroin.  Upon information and belief, DHS, JFK Medical and/or the John Doe Entities/Individuals assumed the responsibility of monitoring Mr. De La Rosa until he safely passed the pellets.

3.      Despite the fact that JFK Medical, the United States Government and/or the John Does Entities/Individuals assumed a duty of care to ensure that Mr. De La Rosa safely passed the pellets, upon information and belief, Mr. De La Rosa was released from JFK Medical, transported to the MDC and placed into the general population with over 30 pellets of heroin in his body.  One of these pellets ruptured, killing Mr. De La Rosa at the age of 55.

4.      Mr. De La Rosa's tragic death is a direct and proximate result of the medical malpractice, gross negligence, negligence and recklessness of the United States, JFK Medical, the agents and employees of the Defendants, and/or the unknown entities and individuals who will be named after further discovery.  While Mr. De La Rosa's family will never be made whole from the loss of its patriarch, this lawsuit seeks money damages from the Defendants arising out Mr. De La Rosa's wrongful death.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*., the Fifth Amendment to the United States Constitution and New York state common law. Liability of the United States is predicated on 28 U.S.C. § 1346(b)(1) and § 2674 because the wrongful death and resulting damages that form the basis of this complaint were proximately caused by the negligence, medical malpractice, wrongful acts and/or omissions of the employees of the United States through its agencies, the DHS and the BOP.  Certain of these employees were acting within the course and scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual under the laws of the State of New York.

6.      On August 29, 2019, Plaintiffs submitted their claim to the DHS.  On January 7, 2020, Plaintiffs' counsel received a right to sue letter and filed this Complaint within six months of said date in accordance with 28 U.S.C. § 2401(b).

7.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a) and 1346(b).

8.      This Court has supplemental jurisdiction over Plaintiff's pendent state law claims under 28 U.S.C. § 1367(a).

9.      The acts complained of occurred in the Eastern District of New York and so venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) and § 1402.

## THE PARTIES

10.     Felix Antonio De La Rosa Alvarez was a citizen of the Dominican Republic.  At the time of his death on March 3, 2018, he was detained at the Metropolitan Detention Center ("MDC") in Kings County.

11.     Mariela De La Rosa is Mr. De La Rosa's daughter and was appointed administrator of his estate on August 28, 2019.  Ms. De La Rosa resides at 2619 Barclay Street, Baltimore MD 21218.

12.     On information and belief, JFK Medical is a professional corporation organized under the laws of the State of New York, with its principal place of business at J.F.K. International Airport, Building 75, Suite 249, Jamaica, New York 11430.  On information and belief, JFK Medical is a provider of medical services, and has an arrangement with DHS to provide x-rays and/or medical services to travelers who are detained by DHS upon entering the United States.

13.     On information and belief, Dr. Manuel Ceja and the John Doe employees, contractors and agents from JFK Medical work at JFK Medical's offices in Jamaica, New York and performed x-rays of Mr. De La Rosa and/or provided treatment and care to Mr. De La Rosa.

14.     The United States of America is an appropriately named defendant for the actions and omissions of DHS, the BOP, and the MDC, under the Federal Tort Claims Act.

15.     Christopher Reid is a Special Agent with DHS, Homeland Security Investigations.

16.     Dr. Bruce Bialor and Duvinka Jordan are employees of the Bureau of Prisons Health Service at the MDC.

17.     The John Doe Entities and Individuals are unknown entities and/or individuals who provided medical treatment to and/or failed to provide medical treatment to Mr. De La Rosa, and will be named as defendants when their names are discovered.

18.     The individually named defendants, Christopher Reid, Dr. Bruce Bialor, Duvinka Jordan, and the John Does, are appropriate defendants under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

## FACTUAL ALLEGATIONS

19.     This lawsuit seeks damages arising from Defendants' gross negligence, negligence, recklessness, and medical malpractice, which caused Mr. De La Rosa's death on March 3, 2018.

20.     On February 23, 2018, Mr. De La Rosa travelled from Santo Domingo, Dominican Republic to JFK Airport in Queens, New York.  Upon arrival at J.F.K. Airport, DHS officials selected Mr. De La Rosa for an enforcement examination.

21.     Upon information and belief, DHS officials transported Mr. De La Rosa to JFK Medical for the x-ray portion of the examination.

22.     Mr. De La Rosa was x-rayed at JFK Medical, which, upon information and belief, is located within JFK Airport.  The x-ray showed the presence of foreign objects in Mr. De La Rosa's body.  Upon information and belief, Dr. Manuel Ceja reviewed Mr. De La Rosa's x-rays and/or treated and consulted with Mr. De La Rosa when he was at JFK Medical.

23.     Following the x-ray, a criminal complaint was filed against Mr. De La Rosa on February 26, 2018 in the United States District Court for the Eastern District of New York. Defendant Christopher Reid, a Special Agent with DHS, Homeland Security Investigations, signed the complaint.  In the complaint, Defendant Reid stated that, as of February 26, 2018, Mr.

De La Rosa "ha[d] passed approximately 30 pellets" which had tested positive for heroin and cocaine. It further stated that Mr. De La Rosa would "be detained at the JFK medical facility until such time as he has passed all the pellets contained within his intestinal tract."

24. Defendant Reid filed a supplemental affidavit on March 1, 2018 and stated that Mr. De La Rosa had passed three additional pellets, for a "total of 33," and that the pellets contained heroin.

25. Despite JFK Medical, DHS's and/or John Doe's assumption of care for Mr. De La Rosa "until such time as he ha[d] passed all the pellets," Mr. De La Rosa was transferred to the MDC in Brooklyn on or around March 1, 2018 while he still had 37 pellets remaining in his intestinal tract.

26. Upon information and belief, the United States, JFK Medical, Dr. Ceja, and/or John Doe failed to adequately screen Mr. De La Rosa to ensure that all of the pellets had safely been passed before he was discharged from JFK Medical's care and released to the MDC on or about March 1, 2018.

27. Upon information and belief, BOP, along with Defendants Bialor and Jordan, who examined Mr. De La Rosa when he reached the MDC, also failed to adequately examine and monitor Mr. De La Rosa once he reached the MDC, to ensure that the life-threatening pellets were no longer in his system and/or that, if still in his system, they could safely be passed. Records from the BOP indicated that Mr. De La Rosa complained of back pain to Defendants Bialor and Jordan, and therefore, they should have examined him further to determine if the pain was related to the heroin pellets. The BOP was aware of the charges against Mr. De La Rosa and therefore knew or should have known of this risk.

28.     The failure of JFK Medical, DHS, BOP, Defendants Ceja, Bialor, Jordan and/or John Doe(s) to detect over 30 remaining pellets in Mr. De La Rosa's body and/or provide proper monitoring to Mr. De La Rosa to ensure that he had safely passed the pellets fell below an objective standard of reasonable care.

29.     As a direct and proximate result of the failures of JFK Medical, DHS and BOP to fulfill their duties of care, on March 3, 2018, Mr. De La Rosa was found dead in his jail cell.

30.     The autopsy report prepared by the Office of the Chief Medical Examiner for the City of New York identified Mr. De La Rosa's cause of death as acute heroin and diltiazem intoxication from the rupture of a pellet containing drugs.  It further stated that Mr. De La Rosa had 37 pellets in his intestinal tract when he died.

31.     Plaintiff contends that Defendants JFK Medical and the medical staff at the BOP, acting by and through their agents, employees, physicians, nurses, and representatives, were grossly negligent, negligent and reckless and fell below that degree of care, skill, and learning expected of a reasonably prudent health care provider in the profession or class to which Defendants belong in the State of New York, acting in the same or similar circumstances.

32.     The Defendants' gross negligence, negligence, medical malpractice, breach of the applicable standard of medical care, and callous disregard for the health and safety of Mr. De La Rosa was the direct and proximate cause of Mr. De La Rosa's death.  If Mr. De La Rosa had been properly monitored and treated, he would not have died.

33.     Upon information and belief, Mr. De La Rosa should have been given laxatives and other drugs to help him safely pass the pellets and, if the pellets were not moving through his intestinal tract, Defendants should have arranged for the pellets to be removed surgically. In addition, Mr. De La Rosa should have been closely monitored in a medical facility so that if one

of the pellets ruptured, he could be given life-saving medications to counteract the effects of heroin and prevent death.  These standard procedures for the medical treatment of drug couriers were not followed.

34.     Upon information and belief, JFK Medical, the DHS and the BOP have specific procedures and protocols that they are supposed to follow when they take custody of a drug courier such as Mr. De La Rosa, and they failed to follow those procedures, resulting in Mr. De La Rosa's death.

35.     While in the United States, Mr. De La Rosa was treated with callous disregard by the Defendants charged with caring for him.  In the Dominican Republic, Mr. De La Rosa was the beloved patriarch of a large family.  He left behind a wife and six children, including a minor son and daughter for whom he provided financial support.

36.     Mr. De La Rosa's death has been emotionally and financially catastrophic for his family.  Mr. De La Rosa ran a convenience store and a factory in the Dominican Republic, but, following his death, the family was forced to sell the convenience store and has lost their home to foreclosure.  Mr. De La Rosa's wife and adult daughter have also struggled to provide for his minor children, and have incurred debilitating expenses arising out of his death.

37.     The Plaintiffs are entitled to damages under N.Y. Est. Powers & Trusts Law § 5-4.3 and/or the Federal Tort Claims Act, 28 U.S.C. § 2674, as applicable.

## AS AND FOR THE FIRST CAUSE OF ACTION
**(Wrongful Death/ Negligence Against the United States, Pursuant to the Federal Tort Claims Act)**

38.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

39.     The United States (via the DHS and BOP) owes a duty of care to safeguard detainees and inmates like Mr. De La Rosa.  It was reasonably foreseeable that one of the heroin pellets inside of Mr. De La Rosa would rupture and that he would die if he were removed from DHS and/or JFK Medical and transferred to the general prison population of the MDC, without putting in place any special procedures to ensure that Mr. De La Rosa safely passed the heroin pellets that were in his intestinal tract.

40.     Mr. De La Rosa died on March 3, 2018 as a direct and proximate result of the wrongful and negligent actions taken by the DHS, BOP and their employees.  The DHS removed Mr. De La Rosa from JFK Medical and transferred him to the custody of the BOP (at the MDC), without putting any special procedures in place for Mr. De La Rosa's welfare, thus breaching the duty of care that they owed to Mr. De La Rosa.

41.     Mr. De La Rosa could have pursued this action against the United States if he had not died.  Because he has died, Ms. De La Rosa is pursuing this claim as the administrator of Mr. De La Rosa's estate.

42.     Mr. De La Rosa's wife and six children have suffered damages as a result of his death, including, but not limited to: the loss of his future earnings, out-of-pocket funeral expenses; the value of parental support, nurturing, care and guidance to his surviving children; and the value of services that he provided to his family, including but not limited to household repairs and maintenance, and damages otherwise available at law or in equity.  In addition, Mr. De La Rosa's estate is entitled to recover for the conscious pain and suffering that he experienced prior to his death.

43.     Mr. De La Rosa's estate is entitled to recover these damages under New York law and the Federal Tort Claims Act.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Wrongful Death/ Medical Malpractice Against the United States, Pursuant to the Federal Tort Claims Act)

44.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

45.     The MDC and/or DHS medical staff departed from acceptable standards of medical practice by failing to detect the remaining pellets in Mr. De La Rosa's system and to properly care for him while he safely passed the heroin pellets that were in his intestinal tract.

46.     This departure from acceptable medical standards was the proximate cause of Mr. De La Rosa's death.

47.     Mr. De La Rosa could have pursued this action against the United States if he had not died.  Because he has died, Ms. De La Rosa is pursuing this claim as the administrator of Mr. De La Rosa's estate.

48.     Mr. De La Rosa is survived by his wife and six children who have suffered damages as a result of his death, including, but not limited to: the loss of his future earnings, out-of-pocket funeral expenses; the value of parental support, nurturing, care and guidance to his surviving children; and the value of services that he provided to his family, including but not limited to household repairs and maintenance, and damages otherwise available at law or in equity.  In addition, Mr. De La Rosa's estate is entitled to recover for the conscious pain and suffering that he experienced prior to his death.

49.     Mr. De La Rosa's estate is entitled to recover these damages under New York law, and the Federal Tort Claims Act.

50.     Plaintiff's counsel has not attached a certificate of merit, as described in New York C.P.L.R. § 3012-a, because Plaintiff is awaiting the decedent's medical records, which

have been repeatedly requested from JFK Medical, and because such a certificate could therefore not be obtained before the statute of limitations for these claims expired.  Pursuant to New York C.P.L.R. § 3012-a(a)(2) and § 3012-a(d) Plaintiff's counsel will file a certificate of merit in connection with this medical malpractice claim within 90 days after service of this complaint and/or after the decedent's medical records are produced by JFK Medical.

### AS AND FOR THE THIRD CAUSE OF ACTION
**(Bivens Claim Against Defendant Reid and John Doe Employees of the DHS for violating Decedent's Fifth Amendment/ Due Process Rights)**

51.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

52.     In late February 2018, Defendant Reid and other John Doe employees of the DHS, acted with deliberate indifference to Mr. De La Rosa's serious medical needs, thus violating his due process rights under the Fifth Amendment to the U.S. Constitution, when they transferred Mr. De La Rosa to the BOP without putting into place any special procedures to ensure that Mr. De La Rosa has safely passed the pellets of heroin in his intestinal track and/or to ensure that he would be properly medically supervised when he reached the MDC.

53.     These actions and omissions of Defendant Reid and other John Doe employees of the DHS constituted an objectively serious deprivation of medical care.

54.     Defendant Reid and the other John Doe employees of the DHS acted recklessly and with deliberate indifference because they knew of and disregarded the excessive risk to Mr. De La Rosa's health and safety from the heroin pellets.

55.     Defendant Reid and the other John Doe employees of the DHS directly participated in this violation of Mr. De La Rosa's Fifth Amendment due process rights, and/or failed to remedy this violation after learning of it through a report, and/or were grossly negligent

in supervising subordinates who caused the violation, and/or failed to act on information indicating that this unconstitutional act was occurring.

## AS AND FOR THE FOURTH CAUSE OF ACTION
**(Bivens Claim Against Defendant Bialor, Defendant Jordan, and John Doe Employees of the BOP for violating Decedent's Fifth Amendment/ Due Process Rights)**

56.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

57.     In late February 2018 and early March 2018, Dr. Bruce Bialor, Duvinka Jordan, and the John Doe employees of the BOP acted with deliberate indifference to Mr. De La Rosa's serious medical needs, thus violating his due process rights under the Fifth Amendment to the U.S. Constitution, when they failed to detect over 30 pellets of heroin in his intestinal tract, and/or failed to transfer Mr. De La Rosa to a medical facility or put into place any special procedures to monitor Mr. De La Rosa so that he could safely pass the pellets.

58.     These actions and omissions of Dr. Bruce Bialor, Duvinka Jordan, and John Doe employees of the BOP constituted an objectively serious deprivation of medical care.

59.     Dr. Bruce Bialor, Duvinka Jordan, and the John Doe employees of the BOP acted recklessly and with deliberate indifference because they knew of and disregarded the excessive risk to Mr. De La Rosa's health and safety from the heroin pellets.

60.     Dr. Bruce Bialor, Duvinka Jordan, and John Doe employees of the BOP directly participated in this violation of Mr. De La Rosa's Fifth Amendment due process rights, and/or failed to remedy this violation after learning of it through a report, and/or were grossly negligent in supervising subordinates who caused the violation, and/or failed to act on information indicating that this unconstitutional act was occurring.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Wrongful Death and Medical Malpractice Against JFK Medical, Dr. Manuel Ceja and John Doe employees at JFK Medical)

61.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

62.     Mr. De La Rosa died on March 3, 2018 as a direct and proximate result of the wrongful and negligent actions and omissions taken by JFK Medical and its employees, including Dr. Ceja, when they permitted Mr. De La Rosa to leave their facility and/or discharged him while he still had 37 pellets of heroin in his intestinal tract, when they failed to provide medical treatment to Mr. De La Rosa to ensure that he passed all the heroin pellets, and/or when they failed to detect the fact that Mr. De La Rosa still had heroin pellets inside of him.

63.     On information and belief, JFK Medical and Dr. Ceja discharged Mr. De La Rosa and/or permitted Mr. De La Rosa to leave their facility without ensuring that the pellets had safely passed, and/or without advising him or DHS officials of the special procedures and care plan that should have been put in place to ensure that Mr. De La Rosa safely passed the heroin pellets that were in his intestinal tract after he left their care.

64.     JFK Medical and Dr. Ceja's actions and omissions departed from accepted standards of medical practice and that departure was the proximate cause of Mr. De La Rosa's death.

65.     These actions and omissions evinced a reckless indifference to Mr. De La Rosa's medical care (equivalent to willful or intentional misdoing), and a conscious and utter disregard for his care and safety, by JFK Medical and its employees, contractors and/or agents.  Their conduct was grossly negligent and inappropriate given their actual knowledge of Mr. De La Rosa's condition and it evinced a high degree of moral culpability and recklessness.

66.     Mr. De La Rosa could have pursued this action against JFK Medical and Dr. Ceja if he had not died.  Because he has died, Ms. De La Rosa is pursuing this claim as the administrator of Mr. De La Rosa's estate.

67.     Mr. De La Rosa is survived by his wife and six children who have suffered damages as a result of his death, including, but not limited to: the loss of his future earnings, out-of-pocket funeral expenses; the value of parental support, nurturing, care and guidance to his surviving children; and the value of services that he provided to his family, including but not limited to household repairs and maintenance, and damages otherwise available at law or in equity.  In addition, Mr. De La Rosa's estate is entitled to recover for the conscious pain and suffering that he experienced prior to his death.

68.     Mr. De La Rosa's estate is entitled to recover these damages under New York law, including interest of 9% since March 3, 2018 and punitive damages.

69.     Plaintiff's counsel has not attached a certificate of merit, as described in New York C.P.L.R. § 3012-a, because Plaintiff is awaiting the decedent's medical records, which have been repeatedly requested from JFK Medical, and because such a certificate could therefore not be obtained before the statute of limitations for these claims expired.  Pursuant to New York C.P.L.R. § 3012-a(a)(2) and § 3012-a(d) Plaintiff's counsel will file a certificate of merit in connection with this medical malpractice claim within 90 days after service of this complaint and/or after the decedent's medical records are produced by JFK Medical.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Wrongful Death, Gross Negligence, and Negligence Against JFK Medical and John Doe employees at JFK Medical)

70.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

71.     JFK Medical and the John Doe employees at JFK Medical owed a duty of care to Mr. De La Rosa when they agreed to treat him and/or to take and review his x-rays.  JFK Medical and the John Doe employees at JFK Medical breached the duty of care that they owed when they failed to properly review his x-rays and/or to provide the proper treatment to Mr. De La Rosa to ensure that all the heroin pellets had passed from his body.  In addition, they breached their duty of care when then they discharged Mr. De La Rosa and/or permitted Mr. De La Rosa to relocate to the BOP without ensuring that the pellets had safely passed.  In the alternative, JFK Medical and the John Doe employees at JFK Medical breached the duty of care that they owed to Mr. De La Rosa when they permitted Mr. De La Rosa to relocate to the BOP without advising him or DHS officials of the special procedures and care plan that should have been put in place to ensure that Mr. De La Rosa safely passed the heroin pellets that were in his intestinal tract after he left their care.

72.     Mr. De La Rosa died on March 3, 2018 as a direct and proximate result of the wrongful and negligent actions and omissions taken by JFK Medical and its employees, contractors and/or agents when they permitted Mr. De La Rosa to leave JFK Medical and/or discharged him from their care, while he still had 37 pellets of heroin in his intestinal tract.

73.     These actions and omissions evinced a reckless indifference to Mr. De La Rosa's rights (equivalent to willful or intentional misdoing), and a conscious and utter disregard for his care and safety, by JFK Medical and its employees, contractors and/or agents.  Their conduct was grossly negligent and inappropriate given their actual knowledge of Mr. De La Rosa's condition and it evinced a high degree of moral culpability and recklessness.  JFK Medical and its employees failed to exercise even slight care in the discharge of the duty that they owed to Mr. De La Rosa.

74.     Mr. De La Rosa could have pursued this action against JFK Medical if he had not died.  Because he has died, Ms. De La Rosa is pursuing this claim as the administrator of Mr. De La Rosa's estate.

75.     Mr. De La Rosa is survived by his wife and six children who have suffered damages as a result of his death, including, but not limited to: the loss of his future earnings, out-of-pocket funeral expenses; the value of parental support, nurturing, care and guidance to his surviving children; and the value of services that he provided to his family, including but not limited to household repairs and maintenance, and damages otherwise available at law or in equity.  In addition, Mr. De La Rosa's estate is entitled to recover for the conscious pain and suffering that he experienced prior to his death.

76.     Mr. De La Rosa's estate is entitled to recover these damages under New York law, including interest of 9% since March 3, 2018 and punitive damages.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
### (Wrongful Death and Medical Malpractice Against John Doe Entities and Individuals)

77.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

78.     Despite diligent efforts and multiple requests, Plaintiff has not received complete medical records relating to Mr. De La Rosa's death from the Defendants.  In the event that another unknown medical facility or individual, in addition to the named Defendants, may have treated Mr. De La Rosa after he was detained by DHS but before he died at the BOP, Plaintiffs have named those entities and the individuals as "John Doe Entities and Individuals" and will amend the Complaint to specifically name those Defendants as soon as Plaintiffs discover their names.

79.     Mr. De La Rosa died on March 3, 2018 as a direct and proximate result of the wrongful and negligent actions and omissions taken by the John Doe Entities and Individuals who provided medical treatment to Mr. De La Rosa: when they permitted Mr. De La Rosa to leave their medical facility and/or discharged him while he still had 37 pellets of heroin in his intestinal tract; when they failed to provide medical treatment to Mr. De La Rosa to ensure that he passed all the heroin pellets; and/or when they failed to detect the fact that Mr. De La Rosa still had heroin pellets inside of him.

80.     On information and belief, these John Doe Entities and Individuals discharged Mr. De La Rosa and/or permitted Mr. De La Rosa to leave their facility without ensuring that the pellets had safely passed, and/or without advising him or DHS officials of the special procedures and care plan that should have been put in place to ensure that Mr. De La Rosa safely passed the heroin pellets that were in his intestinal tract after he left their care.

81.     The conduct of the John Doe Entities and Individuals departed from accepted standards of medical practice and that departure was the proximate cause of Mr. De La Rosa's death.

82.     These actions and omissions evinced a reckless indifference to Mr. De La Rosa's medical care (equivalent to willful or intentional misdoing), and a conscious and utter disregard for his care and safety, by the John Doe Entities and Individuals.  Their conduct was grossly negligent and inappropriate given their actual knowledge of Mr. De La Rosa's condition and it evinced a high degree of moral culpability and recklessness.

83.     Mr. De La Rosa could have pursued this action against the John Doe Entities and Individuals if he had not died.  Because he has died, Ms. De La Rosa is pursuing this claim as the administrator of Mr. De La Rosa's estate.

84.     Mr. De La Rosa is survived by his wife and six children who have suffered damages as a result of his death, including, but not limited to: the loss of his future earnings, out-of-pocket funeral expenses; the value of parental support, nurturing, care and guidance to his surviving children; and the value of services that he provided to his family, including but not limited to household repairs and maintenance, and damages otherwise available at law or in equity.  In addition, Mr. De La Rosa's estate is entitled to recover for the conscious pain and suffering that he experienced prior to his death.

85.     Mr. De La Rosa's estate is entitled to recover these damages under New York law, including interest of 9% since March 3, 2018 and punitive damages.

86.     Plaintiff's counsel has not attached a certificate of merit, as described in New York C.P.L.R. § 3012-a, because Plaintiff is awaiting the decedent's medical records, which have been repeatedly requested from JFK Medical, and because such a certificate could therefore not be obtained before the statute of limitations for these claims expired.  Pursuant to New York C.P.L.R. § 3012-a(a)(2) and § 3012-a(d) Plaintiff's counsel will file a certificate of merit in connection with this medical malpractice claim within 90 days after service of this complaint and/or after the decedent's medical records are produced by JFK Medical or the John Doe Entities.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
### (Wrongful Death, Gross Negligence, and Negligence Against John Doe Entities and Individuals)

87.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

88.     The John Doe Entities and Individuals owed a duty of care to Mr. De La Rosa when they agreed to treat him and/or to take and review his x-rays.  The John Doe Entities and

Individuals breached the duty of care that they owed when they failed to properly review his x-rays and/or to provide the proper treatment to Mr. De La Rosa to ensure that all the heroin pellets had passed from his body.  In addition, they breached their duty of care when then they discharged Mr. De La Rosa and/or permitted Mr. De La Rosa to relocate to the BOP without ensuring that the pellets had safely passed.  In the alternative, the John Doe Entities and Individuals breached the duty of care that they owed to Mr. De La Rosa when they permitted Mr. De La Rosa to relocate to the BOP without advising him or DHS officials of the special procedures and care plan that should have been put in place to ensure that Mr. De La Rosa safely passed the heroin pellets that were in his intestinal tract after he left their care.

89.     Mr. De La Rosa died on March 3, 2018 as a direct and proximate result of the wrongful and negligent actions and omissions taken by the John Doe Entities and Individuals, when they permitted Mr. De La Rosa to leave their facility and/or discharged him from their care, while he still had 37 pellets of heroin in his intestinal tract.

90.     These actions and omissions evinced a reckless indifference to Mr. De La Rosa's rights (equivalent to willful or intentional misdoing), and a conscious and utter disregard for his care and safety, by the John Doe Entities and Individuals.  Their conduct was grossly negligent and inappropriate given their actual knowledge of Mr. De La Rosa's condition and it evinced a high degree of moral culpability and recklessness.  The John Doe Entities and Individuals failed to exercise even slight care in the discharge of the duty that they owed to Mr. De La Rosa.

91.     Mr. De La Rosa could have pursued this action against the John Doe Entities and Individuals if he had not died.  Because he has died, Ms. De La Rosa is pursuing this claim as the administrator of Mr. De La Rosa's estate.

92.     Mr. De La Rosa is survived by his wife and six children who have suffered damages as a result of his death, including, but not limited to: the loss of his future earnings, out-of-pocket funeral expenses; the value of parental support, nurturing, care and guidance to his surviving children; and the value of services that he provided to his family, including but not limited to household repairs and maintenance, and damages otherwise available at law or in equity.  In addition, Mr. De La Rosa's estate is entitled to recover for the conscious pain and suffering that he experienced prior to his death.

93.     Mr. De La Rosa's estate is entitled to recover these damages under New York law, including interest of 9% since March 3, 2018 and punitive damages.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment awarding the following:

94.     Damages in the amount to be determined at trial, available under N.Y. Est. Powers & Trusts Law § 5-4.3 and the Federal Tort Claims Act, 28 U.S.C.A. § 2674, as applicable, from the United States;

95.     Damages in an amount to be determined at trial, plus interest from the date of the decedent's death and punitive damages, under N.Y. Est. Powers & Trusts Law § 5-4.3, from JFK Medical and the John Doe Entities and Individuals; and

96.     Damages as are otherwise allowable at law or in equity.

97.     Such other relief as this Court may deem just and appropriate.

Dated: New York, New York
March 2, 2020

COLSON LAW PLLC

/s/ Deborah A. Colson
Deborah A. Colson
80 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 257-6455 (main)

GELBER & SANTILLO PLLC

By: /s/ Kristen M. Santillo
Kristen M. Santillo
Fern Mechlowitz
347 West 36th Street, Suite 805
New York, NY 10018
Phone: 212-227-4743
*Attorneys for Plaintiff*